FERRIS STATE COLLEGE v FERRIS FACULTY ASSOCIATION

OPINION OF THE COURT

1. LABOR RELATIONS—COLLECTIVE BARGAINING AGREEMENT—ARBITRA-
   TION—COURTS—POLICY.

   The question of the arbitrability of a dispute under a collective
   bargaining agreement is to be determined by the court; how-
   ever, the judicial policy of sharply limiting the scope of the
   court's consideration of this question is undisputed.

2. LABOR RELATIONS—COLLECTIVE BARGAINING AGREEMENT—ARBITRA-
   TION—ORDER.

   An order to arbitrate a particular grievance under a collective
   bargaining agreement should not be denied unless it may be
   said with positive assurance that the arbitration clause is not
   susceptible of an interpretation that covers the asserted dis-
   pute; doubts should be resolved in favor of coverage.

3. LABOR RELATIONS—COLLECTIVE BARGAINING AGREEMENT—ARBITRA-
   TION CLAUSE—EXPRESS PROVISION—FORCEFUL EVIDENCE.

   A matter should go to arbitration absent an express provision in
   a collective bargaining agreement excluding the particular
   grievance from arbitration or the most forceful evidence of a
   purpose to exclude the claim.

4. LABOR RELATIONS—ARBITRATION—COLLECTIVE BARGAINING AGREE-
   MENT—DISPUTES—JUDICIAL INQUIRY—ARBITRABILITY.

   Judicial inquiry, when deciding whether a dispute is arbitrable
   under a collective bargaining agreement, is confined to ascer-
   taining whether the party seeking arbitration is making a
   claim which on its face is governed by the contract.

REFERENCES FOR POINTS IN HEADNOTES
[1–6] 48 Am Jur 2d, Labor and Labor Relations §§ 1246–1257.
[7] 48 Am Jur 2d, Labor and Labor Relations §§ 1246–1257.
[8] 48 Am Jur 2d, Labor and Labor Relations §§ 1251–1255.
[9] 48 Am Jur 2d, Labor and Labor Relations §§ 1191, 1193–1197,
    1201, 1202.

5. ARBITRATION AND AWARD—COLLECTIVE BARGAINING AGREEMENT—
   DISPUTES—PROCEDURAL QUESTIONS—ARBITRATOR.

Procedural questions which grow out of a dispute and bear on its final disposition should be left to the arbitrator, once it is determined that the parties are obligated to submit the subject matter of the dispute to arbitration; judicial review effectively ceases once substantive arbitrability is determined.

DISSENT BY D. E. HOLBROOK, J.

6. LABOR RELATIONS—COLLECTIVE BARGAINING AGREEMENT—ARBITRA-
   TION—EXCLUSION.

*An express provision in a collective bargaining agreement excluding a particular grievance from arbitration will be upheld by the courts.*

7. ARBITRATION AND AWARD—CONTRACT—OPERATION OF LAW—LABOR
   RELATIONS.

*Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit; no obligation to arbitrate a labor dispute arises solely by operation of law.*

8. LABOR RELATIONS—ARBITRATION—DUTY OF COURT—ARBITRABILITY.

*A court's duty to determine whether a question under a collective bargaining agreement is arbitrable should not be delegated to an arbitrator.*

9. LABOR RELATIONS—COLLEGE TEACHERS—PROBATIONARY TEACHER—
   TENURE—COLLECTIVE BARGAINING AGREEMENT—ARBITRATION—
   TEMPORARY TEACHING CONTRACT—TERMINATION AGREEMENT.

*A one-year temporary terminal contract given by a college to a probationary teacher, who had almost reached tenure status, may not enable the teacher to achieve tenure status where (1) the contract confirmed the college's decision to terminate the teacher's employment, (2) the contract was a one-year accommodation as part of a termination agreement, and (3) the contract expressly stated it was not for a permanent position and would not enable the teacher to gain tenure; therefore, a grievance of the teacher is not arbitrable where the applicable collective bargaining agreement expressly excludes claims of probationary employees from arbitration.*

Appeal from Mecosta, Harold Van Domelen, J.

Submitted October 6, 1976, at Grand Rapids. (Docket No. 26796.) Decided November 9, 1976. Leave to appeal denied, 399 Mich —:

Complaint by the Ferris State College Board of Control against the Ferris Faculty Association, MEA-NEA, for an injunction to prevent the arbitration of a dispute between the college and a faculty member. Injunction granted. Defendant appeals. Reversed and remanded for arbitration.

*Miller, Johnson, Snell & Cummiskey* (by *Gordon J. Quist* and *Eric J. Thorsen)*, for plaintiff.

*Foster, Swift & Collins, P. C.* (by *Clifford D. Weiler)*, for defendant.

Before: R. B. Burns, P. J., and D. E. Holbrook and T. M. Burns, JJ.

R. B. Burns, P. J. Plaintiff filed a complaint in circuit court seeking an injunction to prohibit defendant from proceeding with the arbitration of a dispute that plaintiff maintained was nonarbitrable. The circuit court granted plaintiff's motion for summary judgment and issued the permanent injunction from which defendant now appeals.

This case arises from the termination of the employment of Dr. Henry Osowski by Ferris State College, and is concerned with the relationship of this termination to the collective bargaining agreement negotiated by the parties herein.

Dr. Osowski was hired by Ferris State on September 10, 1969 to begin as a full-time faculty member on January 3, 1970. On May 14, 1974, Dr. Osowski was informed by a communication from the president of the college that his "overall performance as a professional faculty member * * * [was] judged not to be satisfactory", and that he

therefore would "not be appointed to a permanent position and [would] not be granted tenure * * * ." By the same document, however, Dr. Osowski was offered a one year "termination contract" for the 1974–1975 academic year which he subsequently signed after recourse to counsel. This contract also recited that Dr. Osowski would "not be granted tenure".

On May 28, 1975, Dr. Osowski filed a grievance alleging violation of numerous sections of the collective bargaining agreement. Following a denial of the grievance, defendant herein requested arbitration on Dr. Osowski's behalf. Plaintiff responded by obtaining the injunction, and this appeal has ensued.

We have concluded that the circuit court committed clear error in granting the injunction. While the question of arbitrability is to be determined by the court, the judicial policy of sharply limiting the scope of the court's consideration of this question is undisputed.

In *Kaleva-Norman-Dickson School District No 6 v Kaleva-Norman-Dickson School Teachers' Association,* 393 Mich 583, 592; 227 NW2d 500, 504 (1975), the Supreme Court adopted the language of *United Steelworkers of America v Warrior & Gulf Navigation Co,* 363 US 574, 582–583; 80 S Ct 1347, 1353; 4 L Ed 2d 1409, 1417–1418 (1960), to guide lower courts in determining whether a dispute should go to arbitration:

" 'An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the *arbitration clause* is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage'. * * * Absent an *'express provision* excluding [a] particular grievance from arbitration' or the *'most*

*forceful evidence* of a purpose to exclude the claim', * * * the matter should go to arbitration". (Emphasis supplied by Michigan Supreme Court).

The *Kaleva* Court further depicted the judicial inquiry as (at 591) "confined to ascertaining whether the party seeking arbitration is making *a claim which on its face* is governed by the contract (emphasis in original)", and portrayed its posture of restraint with unmistakable clarity (at 595):

"[W]here a court finds itself weighing the pros and cons of each party's interpretation of substantive provisions of the contract, it is likely that the court has gone astray. The question for the court is not whether one interpretation or another is correct, but whether the parties have agreed that an arbitrator shall decide which of the competing interpretations is correct."

The circuit court unavoidably weighed the "pros and cons" in deciding to issue the injunction. Resolution of this case hinges on Dr. Osowski's status as probationary or tenured under the collective bargaining agreement. Plaintiff asserts the language of § 3.2B of the agreement that "the employment status of probationary employees rests solely with the college and [is] not subject to grievance review". Defendant counters that the termination contract accepted by Dr. Osowski extended his service beyond the maximum probationary period provided for by § 3.2A (5 years), thus automatically rendering Dr. Osowski tenured and protected from summary dismissal under the "just cause" provision of § 3.1 of the agreement. We think it apparent that this is a squabble which "on its face is governed by the contract". *Kaleva* dictates that such disputes involving the interpretation and application of a collective bargaining agreement must be resolved by an arbitrator.

Plaintiff has not borne the burden of demonstrating through "most forceful evidence" that the arbitration clause of the collective bargaining agreement intended to exclude Dr. Osowski's claim. The decision of the circuit court is reversed.

Plaintiff contends further that Dr. Osowski's grievance is not arbitrable because of certain procedural failures of timeliness. Such an argument was answered by the United States Supreme Court in *John Wiley & Sons, Inc v Livingston,* 376 US 543, 557; 84 S Ct 909, 918; 11 L Ed 2d 898, 909 (1964):

"Once it is determined, as we have, that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator."

This Court concurred in *Ferndale Education Association v Ferndale School District #1,* 67 Mich App 637, 643; 242 NW2d 478, 480 (1976), that "[o]nce substantive arbitrability is determined * * * judicial review effectively ceases".

The injunction is dissolved and the cause is reversed and remanded for arbitration. Costs to defendant.

T. M. BURNS, J., concurred.

D. E. HOLBROOK, J. *(dissenting).* This writer is constrained to respectfully dissent from the decision of the majority as set forth in their opinion.

The majority's discussion of the applicable labor law principles in the instant case is accurate. However, it must be emphasized that the question of arbitrability of a grievance is a question to be decided by the court. *Brown v Holton Public*

*Schools,* 397 Mich 71; 243 NW2d 255 (1976), *Kaleva-Norman-Dickson School District No 6, Counties of Manistee, Lake & Mason v Kaleva-Norman-Dickson School Teachers' Association,* 393 Mich 583; 227 NW2d 500 (1975). If the court deems a question "arbitrable" any question involving the interpretation and application of a collective bargaining agreement must then be resolved by the arbitration process. However, a close look at the facts in the instant case discloses that the most forceful evidence has indicated that the arbitration clause of the collective bargaining agreement expressly excludes Dr. Osowski's claim. See *Kaleva, supra.* It should be found that there is no question which is capable of being submitted to arbitration. Our sole task is to determine if there is any language in the parties' agreement which would support a claim that this dispute should be submitted to arbitration. There is none.

Dr. Osowski initially signed an employment agreement on September 10, 1969. That agreement provided for his part-time employment that fall and his regular full-time employment which was to begin on or about January 3, 1970. He subsequently served as a regular non-tenured probationary faculty member in the 1970–1971, 1971–1972, 1972–1973, 1973–1974 academic years. At the conclusion of the last year, Dr. Osowski was clearly and unambiguously notified that: "[a]gain, during the current academic year, your overall performance as a professional faculty member at this College has been judged not to be satisfactory. * * * [Y]ou will not be appointed to a permanent position and will not be granted tenure at Ferris State College."[1] The collective bargaining agree-

---

[1] Exhibit A, letter dated May 17, 1974 from the president of the college to Dr. Osowski.

ment, agreed to by the union, admittedly Dr. Osowski's bargaining agent, and the employer expressly provides in § 3.2B: "Decisions regarding the employment status of probationary employees rests solely with the College and are not subject to grievance review." A collective bargaining agreement provided for a probationary period not to exceed five years. Collective bargaining agreement § 3.2A. In *Kaleva, supra,* our Supreme Court indicated that an express provision excluding a particular grievance from arbitration will be upheld. 393 Mich at 592; 227 NW2d at 504.

The college apparently decided after such notification and clarification of Dr. Osowski's status to grant a new employment agreement. This agreement expressly provided for a temporary one-academic-year termination contract between the parties. This agreement expressly stated that it was not a permanent position and would not enable Dr. Osowski to gain tenured status. If the employee desired to accept it under these terms he was free to do so. If he did not agree to these terms he was free to reject it. There was absolutely no ambiguity in this offer. The agreement was made crystal clear. Dr. Osowski upon advice of counsel signed this agreement in June of 1974. To allow him to avoid this agreement which he knowledgably signed, would be directly contrary to the parties' contractual intent. There is no reason to allow a variance from the unambiguous written agreement which was voluntarily entered into. Defendant has failed to show why this agreement should be upset. There is no issue which is arbitrable. Dr. Osowski never gained tenure status. All decisions regarding non-tenured employment were exclusively within the control of the college and resort to the arbitration process was not obtainable until tenure status was achieved.

The preferred policy of submitting employment disputes to arbitration is certainly valid. The famous Steelworkers trilogy, *United Steelworkers of America v American Manufacturing Co,* 363 US 564; 80 S Ct 1343; 4 L Ed 2d 1403 (1960), *United Steelworkers of America v Warrior & Gulf Navigation Co,* 363 US 574; 80 S Ct 1347; 4 L Ed 2d 1409 (1960), *United Steelworkers of America v Enterprise Wheel & Car Corp,* 363 US 593; 80 S Ct 1358; 4 L Ed 2d 1424 (1960), and their progeny[2] have announced and explained this policy over and over again. Arbitration creates a unique system of self-government which is created by and confined to the parties involved. *Warrior & Gulf Navigation Co, supra,* 363 US at 581; 80 S Ct at 1352; 4 L Ed 2d at 1417. The arbitrator performs functions not normal to the courts and draws upon an expanded source of "laws". He is a specialist, an expert in the area of labor relations. His prime responsibility is to utilize procedures agreed upon by the parties and fashion an equitable settlement of disputes between the parties. See also *Ferndale Education Association v School District for the City of Ferndale #2,* 67 Mich App 645; 242 NW2d 481 (1976). As the Supreme Court noted, the entire grievance procedure is "a part of the continuous collective bargaining process. It, rather than a strike, is the terminal point of a disagreement". *Warrior & Gulf Navigation Co, supra,* 363 US at 581; 80 S Ct at 1352; 4 L Ed 2d at 1417.

The arbitration process, when properly carried out, results in a unique system of industrial justice.[3] It often results in the fairest decision possi-

[2] *See, for example, Gateway Coal Co v United Mine Workers of America,* 414 US 368; 94 S Ct 629; 38 L Ed 2d 583 (1974), *John Wiley & Sons, Inc v Livingston,* 376 US 543; 84 S Ct 909; 11 L Ed 2d 898 (1964).

[3] While discussing the role of the courts in enforcing an arbitration award, the Court described the arbitrator's function:

ble. The arbitration process is usually unhampered by many legal strictures which would impede the search for "industrial" justice. In addition, it is blessed with the characteristics of speed and efficiency. Courts should recognize the benefits they receive from widespread utilization of arbitration procedures. Courts have benefited from a tremendous saving of judicial time and effort. Undoubtedly the cost to the parties of resolving disputes, in terms of money, manpower and time, has been held down.

Nevertheless, in the instant case, the court has gone too far and ignored the key to the whole concept of arbitration. That key is that the arbitration process is a voluntarily entered into dispute settlement process. The Supreme Court has emphasized that: "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Warrior & Gulf Navigation Co, supra,* 363 US at 582; 80 S Ct at 1353; 4 L Ed 2d at 1417. The 7th Circuit has recently reminded us:

"The first requisite to arbitrability is self-evident. The need for a valid agreement, binding the party to submit his right to arbitration, was restated in *Gateway Coal*

---

"When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem. This is especially true when it comes to formulating remedies. There the need is for flexibility in meeting a wide variety of situations. The draftsmen may never have thought of what specific remedy should be awarded to meet a particular contingency. Nevertheless, an arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, *yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award." Enterprise Corp, supra,* 363 US at 597; 80 S Ct at 1361; 4 L Ed 2d at 1428. (Emphasis added.)

*Co v United Mine Workers,* 414 US 368, 374; 94 S Ct 629, 635; 38 L Ed 2d 583 (1974):

"No obligation to arbitrate a labor dispute arises solely by operation of law. The law compels a party to submit his grievance to arbitration only if he has contracted to do so." *International Union of Operating Engineers, Local Union No 139 v Carl A Morse, Inc,* 529 F2d 574, 577 (CA 7, 1976).

The parties must have agreed to settle the particular dispute in the arbitration process. We need not, and indeed cannot, weigh the merits of any grievance. Nevertheless, the responsibility to ascertain what is arbitrable cannot be ignored. Our review is concerned only with whether the party seeking arbitration is making a claim which on its face is governed by the contract. *American Mfg Co, supra,* 363 US at 568; 80 S Ct at 1346; 4 L Ed 2d at 1407. On its face the dispute in the instant case does not come within those disputes capable of submission to arbitration under the agreement. To ignore the clear language of the parties' agreement is to ignore their clear unambiguous intent when they entered into this agreement. Furthermore, the court has forgotten its responsibility and improperly delegated its duty to determine whether a question is arbitrable to the arbitrator. Federal and state courts have universally recognized that the question of arbitrability is for the courts. The duty to decide this issue must not be forgotten.

What this dispute boils down to is this: what is the effect of the one-year temporary terminal contract provision signed by Dr. Osowski on June 7th. On this date, when Dr. Osowski signed the agreement he was a probationary employee. This is undisputed. The collective bargaining agreement in § 3.2B expressly provided: "the employment

status of probationary employees rests solely with
the college and is not subject to grievance review".
The decision to terminate Dr. Osowski's employ-
ment was not subject to review.[4] The majority
ruled that there is an arbitrable question in the
instant case, *i.e.,* whether the one-year termination
agreement automatically rendered Dr. Osowski
tenured and protected from summary dismissal
under the "just cause" provision of § 3.1 of the
collective bargaining agreement. However, this
one-year temporary terminal agreement, in addi-
tion to confirming the college's decision to termi-
nate him, granted Dr. Osowski a one-year accom-
modation as part of the termination agreement
and gave him an additional year's employment.[5]
The temporary agreement also importantly pro-

---

[4] Defendant now contends that the notice of termination was im-
proper and that this raises an arbitrable question. This question was
apparently not raised below. An issue not raised in the pleadings or
argued to the trial court may not be urged on appeal. *Magnotta v
Michigan Millers Mutual Insurance Co,* 35 Mich App 450; 192 NW2d
553 (1971), *Dale v Whiteman,* 388 Mich 698; 202 NW2d 797 (1972). We
do note that this notice issue is based on the parties' collective
bargaining agreement. This agreement was the first between the
parties and was reached on November 27, 1973. Section 3.2B of the
collective bargaining agreement required notice of non-reappointment
to be given to employees in their fourth or fifth year of service by
October 1. Defendant contends that this means in this case October 1,
1973. This was almost two months prior to the existence of the
collective bargaining agreement. There has been a failure to demon-
strate how this can occur.

[5] Plaintiff maintains that this one-year termination agreement was
granted in order to give Dr. Osowski an additional year in order to
find suitable employment. Of course, the inference is that this was
done out of a sense of generosity or fairness. Defendant does not
"enlighten" us on the motivation for this one-year contract and no
testimony indicates a rationale for this grant of an additional year's
employment. The motivation for this, however, is irrelevant to this
decision which involves only a question of law as to whether the
dispute is arbitrable. Injection of the rationale for such a move would
only muddy the waters and tend to involve us in the merits of the
dispute, exactly what we cannot do in determining arbitrability. The
parties should be commended for generally leaving emotion and
arguments as to the merits of the dispute out of their well-written
briefs.

vided that this agreement could not grant him tenure status and was not a contract for permanent full-time position. Dr. Osowski, after advice from counsel, signed the agreement agreeing to its terms. The parties to the agreement in the instant case have expressly excluded this dispute from the arbitration process. The majority has apparently rewritten the bargained-for agreement between the parties in order to render the dispute arbitrable. This writer cannot do so. The trial court properly found that this question was not arbitrable and granted injunctive relief prohibiting arbitration in this dispute. I vote to affirm.